UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KENNETH MADISON,

    *Plaintiff*,

CASE NO. 12-CV-12189

*v.*

COMMISSIONER OF
SOCIAL SECURITY,

DISTRICT JUDGE DAVID M. LAWSON
MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

### I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence does not support the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **GRANTED**, that Defendant's Motion for Summary Judgment be **DENIED**, and that the case be **REMANDED** to the Commissioner under sentence four of 42 U.S.C. § 405(g) to fully develop the record and for further proceedings.

### II.    REPORT

#### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claims for Supplemental Security Income ("SSI")

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 10, 13.)

Plaintiff Kenneth Madison was 51 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 6 at 39.) Plaintiff has no employment history of substantial gainful activity, but did work for several months as a chore provider and laborer. (Tr. at 26, 180.) Plaintiff filed the instant claim on January 22, 2008, alleging that he became unable to work on November 1, 2007. (Tr. at 20.) The claim was denied at the initial administrative stages. (Tr. at 94.) In denying Plaintiff's claims, the Commissioner considered mental retardation and personality disorders as possible bases for disability. (*Id.*) On June 29, 2010, Plaintiff appeared before Administrative Law Judge ("ALJ") Sylke Merchan, who considered the application for benefits *de novo*. (Tr. at 17-32, 33-72.)[2] In a decision dated September 21, 2010, the ALJ found that Plaintiff was not disabled. (Tr. at 28.) Plaintiff requested a review of this decision on October 19, 2010. (Tr. at 10-15.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on April 24, 2012, when the Appeals Council denied Plaintiff's request for review. (Tr. at 1-6.) On May 17, 2012, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

**B.     Standard of Review**

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative

---

[2]Plaintiff also appeared before the ALJ on April 28, 2010, when, after being explained his right to be represented at the hearing, decided to think about securing representation before continuing. (Tr. at 73-93.)

2

review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability"). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting SSR 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006).

3

*See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006).

Judicial review of the ALJ's decision is direct, "but we play an 'extremely limited' role." *Simila v. Astrue,* 573 F.3d 503, 513-14 (7th Cir. 2009). "We do not actually review whether [the claimant] is disabled, but whether the Secretary's finding of not disabled is supported by substantial evidence." *Lee v. Sullivan*, 988 F.2d 789, 792 (7th Cir. 1993). Just as "'[n]o trial is perfect,' . . . no administrative hearing or opinion is either[;] thus, in analyzing an ALJ's decision, a reviewing court is to look for 'fatal gaps or contradictions' and not 'nitpick' in search of essentially meaningless missteps." *Masters v. Astrue*, 818 F. Supp. 2d 1054, 1965 (N.D. Ill. 2011).

**C.     Governing Law**

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits ("DIB") program of Title II, 42 U.S.C. §§ 401 *et seq.*, and the Supplemental Security Income ("SSI") program of Title XVI, 42 U.S.C. §§ 1381 *et seq.* Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work[.]" *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.     ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since January 22, 2008, the application date. (Tr. at 22.) At step two, the ALJ found that Plaintiff's borderline intellectual functioning and illiteracy were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 23-24.) At step four, the ALJ found that Plaintiff has no past relevant work. (Tr. at 26.) The ALJ also found that on the date the application was filed, Plaintiff was a younger individual, i.e., between the ages of 18 and 49. (*Id.*) At step five, the ALJ found that Plaintiff could perform

> a full range of work at all exertional levels but with the following nonexertional limitations: no work requiring reading, writing or math; a work environment that involves simple, routine, repetitive tasks with only one- or two-step instructions; a work environment free of fast-paced production requirements; a work environment with only simple work-related decisionmaking; and a work environment with few, if any, workplace changes.

(Tr. at 24-26.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 27-28.)

### E. Administrative Record

A review of the relevant medical evidence contained in the administrative record consists of an evaluation by Thomas Siebert, L.L.P., and evidence from the Michigan Department of Career Development Rehabilitation Services dated December 4, 2007. (Tr. at 273-94, 307-15.) A consultative examination was performed by Mark Zaroff, Ph.D., L.P., of Saginaw Psychological Services on September 7, 2010. (Tr. at 362-72.)

A Mental Residual Functional Capacity ("RFC") Assessment was completed by Mark Garner, Ph.D., on April 11, 2008, finding that Plaintiff was markedly limited in the ability to understand, remember and carry out detailed instructions, was moderately limited in his ability to maintain attention and concentration for extended periods, but was otherwise not significantly limited in understanding, memory, or sustained concentration and persistence. (Tr. at 316-17.) Plaintiff was found to be either moderately or not significantly limited in the areas of social interaction and adaptation. (Tr. at 317.) The assessment concluded that Plaintiff "would do best at simple routine tasks that have little variability or need to make independent judgements" and that Plaintiff "retains the ability to do one and two step tasks on a sustained basis." (Tr. at 318.)

A Psychiatric Review Technique was completed on April 11, 2008, by Dr. Garner, indicating that Plaintiff has mild mental retardation, antisocial personality disorder, and substance abuse addiction disorder. (Tr. at 324, 327, 328.) Plaintiff was assessed as having mild limitations in activities of daily living and moderate limitations in maintaining social functioning and in maintaining concentration, persistence, or pace. (Tr. at 330.)

At the administrative hearing, Plaintiff was unrepresented but was accompanied by his daughter, who asked questions and provided some testimony. Plaintiff testified that he dropped out of high school in tenth grade and that although he tried to complete the GED course, he failed at his attempt. (Tr. at 39.) Plaintiff stated that he can write his name but that he otherwise cannot read or write so he relies on his fiancee or daughter for help. (Tr. at 40.) Plaintiff was not able to pass the test to obtain a driver's license, so he uses a bicycle and backpack to get around in the summer and relies on his daughter in the winter. (Tr. at 40-41.) At the time of the hearing, Plaintiff

7

had just begun a training program at New Dimensions, based on a referral from the Michigan Rehabilitation Center. (Tr. at 41.) Plaintiff indicated that he was "catching on" to the program so far and that he had learned how to properly make a bed as they do in hotels. (Tr. at 42, 53.) Plaintiff testified that he had worked at taking care of his fiancee for several months while she was recovering from surgery and that he was paid by the State of Michigan or his fiancee's healthcare. (Tr. at 43-44.) Plaintiff stated that he had also done seasonal work in 2000 and 2001 for a company called Do-All, where he "just put bags in boxes, Ziploc bags, count five, put it in the box." (Tr. at 45.)

Plaintiff testified that he had been jailed several times in the past, most recently in 2007, because he "tried to sell drugs, and it only happened once in my life and got caught right quick[.]" (Tr. at 45.) Plaintiff was sentenced to five years' probation and his probation officer sent him to the "Michigan Rehabilitation Center, where they tested me and stuff, and then they sent me to the welfare office - - I mean, sent me to the Social Security office." (Tr. at 46.) Plaintiff had been convicted of larceny in a building some fifteen or so years before because he went into a "burned up building and was stealing copper[.]" (Tr. at 47.)

Plaintiff testified that he sees a counselor named Gary Hollick through the Michigan Rehabilitation Center and Rebecca Burlson at New Dimensions. (Tr. at 47-48.) Plaintiff has never had any mental health counseling or treatment. (Tr. at 48.) Plaintiff did participate in an alcohol treatment program and had been sober for one and one-half years at the time of the hearing. (Tr. at 49.) Plaintiff stated that he is unable to work for the "simple reason that I can't read or write, because my health is all right." (Tr. at 50.)

Plaintiff stated that he helps his fiancee do chores around the house, such as cleaning, washing dishes, vacuuming, sweeping, and dusting. He stated that he is able to care for his own personal hygiene needs, make sandwiches, go fishing two or three times a week, and that he enjoys watching Law & Order on television and is able to generally understand the plot but, if he can't, his fiancee explains it to him. (Tr. at 50-52, 56.) Plaintiff stated that he enjoys riding his bicycle

8

and often rides for two hours or twenty miles on a bike trail around Bay City, Michigan, where he lives. (Tr. at 51, 53.)

> A medical expert, Dr. David Biscardi, licensed psychologist, testified as follows:
>
> Well, the record does establish some impairments, Your Honor, but the drug and alcohol issue was an interfering factor back when the testing was done in 2F, on 4.4.07. And at that time, the examiner felt that the Claimant needed six months' sobriety before he'd be ready for voc. rehab. In fact, the Claimant has been sober for a year-and-a-half now, subsequent to that. He is participating in voc. rehab, and I'm unaware that there are updated test results. What I would point out to Your Honor is that what we have of record is school evidence in 1 F, which indicates testing at ace 12.7, where the Claimant was found to suffer from borderline intellectual functioning, full scale IQ of 77. Subsequent testing at Michigan Department of Career Development and Rehabilitation, 2F, on 12/4/07 diagnosed anti-social personality and alcohol dependence. And IQ testing showed a full scale of 67, which would be in the mentally retarded range; however, the examiner indicated, at that time, that the Claimant was actively using alcohol, so there's some problem with the validity of those test results in that they actually rendered the Claimant's actual intellectual potential at the time, as interfered with by the alcohol use. I'll point out that the academic testing at the time showed, using the Woodcock-Johnson test of academic achievement, the third edition, his leading decoding standard was 79. Now, these scores are provided in standard score format, to allow you to make comparisons with IQ testing. That is 70 or below would be considered mentally retarded if functional capacities were similar to mental retardation. However, scores above that - - in this case, the wording decoding standard was 79, would be in the borderline range. His reading comprehension score - - standard score was 86, and that is in the low average range. His reading speed score was 79, which is in the high borderline range. Math score was 69. Spelling, 70. And conceptual ability on the WAIS-III, the IQ testing subscale was 69. Again, the Woodcock-Johnson comprehension of written language standard score was 86, which is the low average range. This is inconsistent with the Claimant's testimony, and it appears inconsistent with standard IQ scores back in 1971, when the Claimant was 12. The other IQ testing was done where, in fact, he did show problems with reading and spelling. Reading was 63; spelling was 65; math was 75. But as I mentioned currently - - or more currently, in 2007, the reading comprehension standard score was 86, and the comprehension of written language was 86. These are somewhat in conflict . . . . It looks like we're looking at a differential diagnosis between mild mental retardation - - I don't think the Claimant is retarded - - and borderline intellectual functioning.

(Tr. at 59-61.) Dr. Biscardi also indicated that evidence from New Dimensions and the Department of Rehabilitation "would be helpful in establishing the current severity for exactly what impairment" and Plaintiff indicated he had cards with contact information with him. (Tr. at 60-61.) The ALJ then indicated that he "agree[d] with the doctor" that "we do need to have some more evidence[.]" (Tr. at 62.) At the close of the hearing, the ALJ asked for the business cards and stated, "I'll have my clerk request those records" and that his clerk would "have [Plaintiff] fill out

9

another disclosure of information, to make sure that allows us to request your medical records[.]" (Tr. at 69.) The ALJ then indicated that he would "send [Plaintiff] out for some more testing . . . So what's going to happen is we'll send you a letter in the mail and let you know where you need to go and when for this testing." (Tr. at 69.) Plaintiff's daughter asked for another copy of the list of attorneys that the ALJ had provided at the previous hearing and the ALJ indicated that his clerk would provide her with another copy. (Tr. at 69-70.) The exhibits referenced from the hearing end with 8F and the administrative record also concludes with 8F. Therefore, it appears that these other records were never obtained.

At the administrative hearing, the ALJ asked the Vocational Expert ("VE") to consider an individual with Plaintiff's background who

> does not have any exertional limitations, however, is limited to only simple, routine, repetitive tasks, with only one- to two-step instructions, performed in a work environment free of fast-paced production requirements, and limited to only simple, work-related decision making.

(Tr. at 65.) The VE testified that such a person could perform the 4,300 light, unskilled dishwasher jobs, 4,300 janitorial jobs, and 2,000 grounds maintenance worker jobs in the regional economy. (Tr. at 66.) The ALJ asked whether "any of these three job categories you gave, is there a literacy requirement?" and the VE responded, "No." (Tr. at 66.) Plaintiff's daughter then asked the VE about the need to read as a janitorial worker because, based on her experience, a janitor needs to be able to read the warning signs for chemicals used, and the VE responded that there are different levels and that there would be no reduction in the numbers given based on illiteracy. (Tr. at 67.)

      **F.**    **Analysis and Conclusions**

      **1.**    **Legal Standards**

The ALJ found that Plaintiff could perform

> a full range of work at all exertional levels but with the following nonexertional limitations: no work requiring reading, writing or math; a work environment that involves simple, routine, repetitive tasks with only one- or two-step instructions; a work environment free of fast-paced production requirements; a work environment with only simple work-related decisionmaking; and a work environment with few, if any, workplace changes.

10

(Tr. at 24-26.) After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

### 2. Substantial Evidence

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. (Doc. 10.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Specifically, Plaintiff contends that the ALJ's findings at step three regarding Listing 12.05(C) were erroneous because the ALJ improperly rejected Plaintiff's most recent IQ tests in favor of an older score conducted in 1971, when Plaintiff was twelve years old (Doc. 10 at 7-8), improperly failed to assess weight to the 2007 IQ scores because Plaintiff admitted to actively using alcohol at that time (*id*. at 8-9), and failed to properly evaluate Plaintiff's deficits in adaptive functioning. (*Id*. at 10-12.) In addition, Plaintiff argues that the ALJ did not meet its burden to fully and fairly develop the record because Plaintiff was unrepresented at the hearing and, after the ALJ indicated at the close of the hearing that it would "request [] records to add to the file" and Plaintiff signed a medical release for these records, "no records from any of these places [New Dimensions and Saginaw Psychological Services] appear in the file." (*Id*. at 12-13.) Finally, Plaintiff contends that the ALJ's RFC contains substantial limitations, i.e., the inability to read and write, not found in the questions presented to the VE. (Doc. 10 at 13-14.)

I suggest that Plaintiff's argument that the ALJ did not meet the burden to fully and fairly develop the record is dispositive of the instant case. The "burden of providing a complete record, defined as evidence complete and detailed enough to enable the Secretary to make a disability determination, rests with the claimant." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) (citing 20 C.F.R. §§ 416.912, 416.913(d)). "Only under special

11

circumstances, when a claimant is without counsel, not capable of presenting an effective case, and unfamiliar with hearing procedures does the ALJ have a special duty to develop the record." *Rise v. Apfel, Comm'r of Soc. Sec.*, No. 99-6164, 2000 WL 1562846, at *2 (6th Cir. 2000) (citing *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051-52 (6th Cir. 1983)).

"Where a claimant seeking judicial review argues that the ALJ failed to fully and fairly develop the record, a court will remand only if the claimant can demonstrate that [he] was prejudiced . . . . To establish prejudice, the claimant must point to specific facts that the ALJ did not consider and show that those facts would have been relevant to the ALJ's determination." *Czibor v. Astrue*, No. 12C 1678, 2012 WL 4361554, at *7 (N.D. Ill. Sept. 20, 2012) (citing *Nelms v. Astrue*, 553 F.3d 1039, 1098 (7th Cir. 2008)). Mere conjecture is insufficient. *Binon v. Shalala*, 13 F.3d 243, 246 (7th Cir. 1994).

In the instant case, Defendant argues that Plaintiff cannot establish prejudice because "it is unclear" how these records would bolster his claims on appeal. (Doc. 13 at 14-15.) However, I suggest that the ALJ's own discourse with Plaintiff and the medical expert shows the prejudice he suffered. The ALJ focused on the importance of garnering some evidence of Plaintiff's abilities since his significant sobriety of one and one-half years. The ALJ stated that it "agree[d] with the doctor" that "we do need to have some more evidence[.]" (Tr. at 62.) At the close of the hearing, the ALJ stated, "I'll have my clerk request those records" and further stated that the clerk would "have [Plaintiff] fill out another disclosure of information [form], to make sure that allows us to request your medical records[.]" (Tr. at 69.) In addition, the ALJ stressed the importance of securing current testing and stated that the clerk would "send [Plaintiff] a letter in the mail and let you know where you need to go and when for this testing." (Tr. at 69.)

Under these circumstances, I suggest that the ALJ's error in failing to follow through with promises to fully develop the record warrants remand. *See Burrows v. Comm'r of Soc. Sec.*, No.12-cv-10109, 2012 WL 5411113, at *10 (E.D. Mich. Sept. 28, 2012) (the ALJ's failure to attempt to obtain records central to the plaintiff's claim and records that the ALJ expressly stated he would obtain for the plaintiff prejudiced the plaintiff's right to a full and fair hearing) (citing *Mejias v.*

*Apfel*, No. 96 Civ. 9680, 1998 WL 651052, at *7 (S.D.N.Y. Sept. 23, 1998) ("The ALJ's failure to obtain the plaintiff's records from her treating sources is particularly significant because, as noted above, he implied at the conclusion of the hearing that he would obtain the records . . . .")).

I therefore recommend that the case be remanded under sentence four of 42 U.S.C. § 405(g) so that the ALJ may fully develop the record as promised.

### III.   REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                 s/ **Charles E Binder**
                                 CHARLES E. BINDER
Dated: May 7, 2013                   United States Magistrate Judge

### CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date:  May 7, 2013                       By      s/Patricia T. Morris
                                                      Law Clerk to Magistrate Judge Binder